**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ALFRED TRIPPETT, on behalf of himself and all others similarly situated,

           Plaintiffs,

           v.

CAMRISE, LLC,

           Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case no. 1:25-cv-5399

CLASS ACTION COMPLAINT
AND
DEMAND FOR JURY TRIAL

## INTRODUCTION

1. Plaintiff, Alfred Trippett ("Plaintiff" or "Trippett"), brings this action individually and on behalf of all others similarly situated against Camrise, LLC ("Defendant"), and alleges the following:

2. Plaintiff is a visually impaired and legally blind man who depends on screen-reading software to access website content on his computer. For clarity, the terms "blind" or "visually impaired" include individuals who, like Plaintiff, have a corrected visual acuity of 20 x 200 or worse. Some people who meet this definition retain limited vision, while others are entirely without sight.

3. According to the U.S. Census Bureau's 2010 report, there are roughly 8.1 million visually impaired people in the United States, with around 2 million who are blind. A 2015 American Foundation for the Blind report estimated approximately 400,000 visually impaired residents in New York State alone.

4. Plaintiff files this civil rights suit because Defendant failed to design, build, maintain, and operate its website in a way that blind and visually impaired individuals, including Plaintiff, can use

1

independently. As a result, Defendant denies blind and visually impaired people across the country equal access to the goods and services it offers through https://djinyc.com (the "Website"). By refusing full and equal access to its website—and thus its products and services—Defendant violates Plaintiff's rights under the Americans with Disabilities Act ("ADA").

5. Defendant's Website advertises and sells various goods, services, promotions, and programs. But the Website has serious accessibility barriers that make it difficult or impossible for blind and visually impaired users to navigate or complete purchases. These barriers exclude blind and visually impaired individuals from participating equally in the increasingly essential online marketplace. As technology evolves, assistive tools like screen readers should empower blind people to access online goods and services independently.

6. For blind users, online shopping is even more important than for sighted people due to mobility challenges. An inaccessible website effectively shuts them out from buying Defendant's products or services.

7. Despite the widespread availability of web accessibility solutions—including features like alternative text, accessible forms, descriptive links, scalable text, and careful use of tables and JavaScript—Defendant has opted to maintain a website that relies solely on a visual interface. Sighted visitors can browse and buy without help, but blind users need sighted assistance to shop, stripping them of independence.

8. Defendant's inaccessibility violates both federal and state laws requiring businesses to provide equal access to blind consumers.

9. When Congress enacted the ADA, it declared a national mandate to eliminate discrimination against people with disabilities, including the barriers posed by inaccessible websites. Similarly, New York law demands that places of public accommodation make reasonable accommodations to ensure people with disabilities can access goods and services.

10. Plaintiff tried to browse and purchase a camera drone on the Website but was unable to do so independently due to the site's lack of basic accessibility features. Without remediation of these barriers, Plaintiff and the class will remain unable to freely navigate, browse, use, and complete purchases on the Website.

11. Defendant's inaccessible Website violates the ADA because it denies equal access to blind and visually impaired consumers. Plaintiff seeks a permanent injunction requiring Defendant to update its policies, practices, and procedures so the Website is and remains accessible. Plaintiff also seeks compensatory damages for the discrimination suffered by the class.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181 et seq., and 28 U.S.C. § 1332. The Court also has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's related claims under the New York State Human Rights Law (N.Y. Exec. Law, Article 15) and the New York City Human Rights Law (N.Y.C. Administrative Code § 8-101 et seq.).

13. Venue is proper in the Southern District of New York under 28 U.S.C. §§ 1391(b), (c), and 144(a) because Defendant does substantial business in this District, and much of the conduct giving rise to

the claims occurred here, including Plaintiff's multiple attempts to use the Website within this District.

14. Defendant is registered to do business in New York and regularly conducts business in the state, including this District. Defendant intentionally solicits business from New York residents through its Website, and it is routine for Defendant to transact with consumers in New York. Defendant's actions causing injury to Plaintiff and other consumers took place in this District, making venue appropriate.

15. Courts have repeatedly recognized that venue is proper where a plaintiff attempts to access a website in a particular district. In Access Now, Inc. v. Otter Products, LLC, 280 F. Supp. 3d 287 (D. Mass. 2017), Judge Patti Saris held that attempts to access a website in the forum state are part of the events underlying the claim, and thus venue is proper. See Otter Prods., 280 F. Supp. 3d at 293-94.

16. Likewise, in Access Now, Inc. v. Sportswear, Inc., No. 17-cv-11211-NMG, 2018 U.S. Dist. LEXIS 47318 (D. Mass. Mar. 22, 2018), Judge Nathaniel Gorton noted that a defendant availing itself of a forum state's economic opportunities by targeting residents creates a sufficient basis for venue. Defendant's deliberate efforts to engage New York consumers through its Website justify venue here.

**PARTIES**

17. Plaintiff is, and at all relevant times has been, a resident of New York County, New York.

18. Plaintiff is legally blind and a member of a protected class under the ADA (42 U.S.C. § 12102(1)-(2)), the ADA's implementing regulations at 28 C.F.R. §§ 36.101 et seq., the New York State Human Rights Law, and the New York City Human Rights Law.

19. Due to his blindness, Plaintiff cannot navigate a website without the assistance of screen-reading software. As a result of the accessibility barriers present on Defendant's Website, Plaintiff has been denied full enjoyment of the Website's facilities, goods, and services.

20. Defendant Camrise, LLC is a New York limited liability company with its principal place of business at 685 5th Avenue, New York, NY 10022. Defendant owns and operates the Website, [https://djinyc.com](https://djinyc.com), which markets and sells a range of camera drones, photography equipment, and related accessories. The Website allows consumers to browse and purchase drones, cameras, and related gear online. Defendant's Website is a place of public accommodation within the meaning of Title III of the ADA, 42 U.S.C. § 12181(7). The Website's inaccessibility has prevented Plaintiff from independently researching and purchasing camera drones.

## NATURE OF THE CASE

21. The Internet has become an essential resource for obtaining information, shopping, banking, education, and countless other everyday activities for both sighted and blind or visually impaired individuals.

22. Blind users rely on screen-reading software paired with keyboard navigation to access websites. Unless websites are designed to be compatible with these tools, blind individuals cannot fully use or benefit from them. Websites must render content in a way that screen readers can interpret

5

textually, or blind users will be excluded from accessing the information, products, and services available to sighted users.

23. For blind individuals using Windows-based computers and devices, popular screen-reading programs like Job Access With Speech ("JAWS") are critical for independent web access.

24. The World Wide Web Consortium (W3C) has published the Web Content Accessibility Guidelines ("WCAG 2.2"), which are internationally recognized standards for making websites usable by blind and visually impaired people. These guidelines are widely followed by businesses and government agencies to ensure digital accessibility, and many courts have identified WCAG 2.2 as the benchmark for compliance. Additionally, Section 508 of the Rehabilitation Act has set similar standards for federal agencies. These guidelines recommend essential features, including invisible alternative text on graphics, full keyboard functionality, descriptive links, accessible image maps, and proper use of headings for navigation. Without these basic components, websites cannot be independently used by blind individuals.

25. Websites must also work with the most common screen readers and be continually maintained so they remain accessible to all users.

## FACTUAL ALLEGATIONS

26. Defendant operates and controls its Website, https://djinyc.com, in New York and markets its products nationwide.

27. The Website is an online retail store offering consumers the ability to browse and purchase camera drones, photography equipment, and related accessories. Shoppers use the Website to learn about products, compare features, and complete transactions.

28. This case arises because Defendant has failed to make its Website accessible to blind users, denying them equal access to the goods and services offered online. Defendant's refusal to remove accessibility barriers has prevented and continues to prevent blind individuals from independently using the Website in the same way as sighted customers.

29. Due to these barriers, blind users cannot freely navigate the Website or complete purchases on their own, effectively excluding them from the same shopping experience available to sighted individuals.

30. The Website contains substantial obstacles for screen-reading software and keyboard navigation. Critical areas of the site are difficult to reach or entirely inaccessible, including the shopping cart and checkout process, which are not properly labeled or structured for assistive technology. Headings throughout the site are poorly organized, making it confusing and frustrating for blind users to navigate between sections or identify important content. Many product images lack meaningful alternative text or return unhelpful messages such as "no description available," leaving blind customers without the information necessary to evaluate products.

31. Plaintiff uses NVDA screen-reading software and personally encountered these issues when attempting to use the Website. He visited the Website on June 5, 2025, and again on June 18, 2025, hoping to research and purchase a camera drone. On both occasions, Plaintiff struggled to move between sections of the Website due to broken or missing headings, was unable to access or review the contents of his shopping cart without sighted assistance, and found that images of drones were either unlabeled or incorrectly labeled, providing no useful information. These barriers made it impossible for him to complete a purchase independently.

32. Plaintiff intends to return to the Website and complete his purchase as soon as Defendant addresses and corrects these accessibility barriers. Without prompt remediation, Plaintiff's injury will persist, as he still wants to purchase a camera drone but cannot do so without a fully accessible Website.

33. Plaintiff has firsthand knowledge of these persistent barriers, which have denied him full and equal access to the goods, services, and benefits offered by the Website. Defendant's conduct in knowingly maintaining an inaccessible Website and failing to take prompt action to correct the problems has caused Plaintiff to suffer concrete and particularized harm. Defendant's use of policies, practices, or design standards that result in these barriers discriminates against blind individuals, depriving them of equal opportunity to access and enjoy Defendant's online goods and services.

## CLASS ACTION ALLEGATIONS

41. Plaintiff brings this action on behalf of himself and all others similarly situated and seeks to certify the following nationwide class pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure: all legally blind individuals in the United States who have attempted to access the Website and, as a result, have been denied access to the enjoyment of goods and services offered by the Website during the relevant statutory period. Plaintiff also seeks certification of a New York subclass under Fed. R. Civ. P. 23(a), 23(b)(2), and alternatively 23(b)(3), defined as all legally blind individuals in New York State who have attempted to access the Website and were denied full and equal access during the relevant statutory period.

42. The number of visually impaired individuals in New York alone numbers in the hundreds of thousands, and there are approximately 8.1 million visually impaired individuals in the United States. Accordingly, the members of the proposed class and subclass are so numerous that joinder

8

of all members would be impractical, and proceeding by class action will promote judicial efficiency.

43. This case arises from Defendant's ongoing policy and practice of operating a Website that is inaccessible to blind individuals, thereby denying them equal access to Defendant's products and services. As a result of Defendant's failure to remove these barriers, blind individuals have been and continue to be denied full and equal access to independently browse, evaluate, and purchase camera drones and related equipment from the Website.

44. Common questions of law and fact exist for all class members, including but not limited to whether the Website is a place of public accommodation under the ADA; whether the Website qualifies as a place or provider of public accommodation under New York State and New York City law; whether Defendant's operation of the Website denies blind individuals the full and equal enjoyment of its goods and services in violation of federal and state law; and whether Defendant's refusal to remove access barriers constitutes unlawful discrimination.

45. Plaintiff's claims are typical of the claims of class members because he, like the class, is legally blind and was denied full and equal access to the Website's goods and services due to Defendant's inaccessible website. Plaintiff will fairly and adequately protect the interests of the class because he has retained experienced counsel skilled in complex litigation and class actions, and because his interests do not conflict with those of other class members.

46. Class certification under Fed. R. Civ. P. 23(b)(2) is appropriate because Defendant has acted or refused to act on grounds generally applicable to the class, making injunctive and declaratory relief appropriate with respect to the class as a whole. Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over

individual issues, and a class action is the superior method for fairly and efficiently adjudicating the controversy.

47. Resolving this matter as a class action will promote judicial economy by avoiding the burden of multiple similar lawsuits by blind individuals seeking to enforce their right to access Defendant's Website.

**FIRST CAUSE OF ACTION**

*(Violation of 42 U.S.C. §§ 12181 et seq. – Title III of the Americans with Disabilities Act)*

48. Plaintiff, on behalf of himself and the class, repeats and realleges each allegation of the preceding paragraphs as if fully set forth herein.

49. Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182(a), prohibits discrimination on the basis of disability in the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation. It also bars entities from utilizing standards or criteria that effectively discriminate against individuals with disabilities, as set forth in 42 U.S.C. § 12181(b)(2)(D)(i).

50. Defendant's Website is a sales establishment and qualifies as a place of public accommodation under 42 U.S.C. § 12181(7). Defendant, as the owner and operator of the Website, is therefore subject to Title III of the ADA.

51. Under 42 U.S.C. § 12182(b)(1)(A)(i), it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, and privileges of

an entity. Similarly, under § 12182(b)(1)(A)(ii), it is unlawful to offer disabled individuals unequal opportunities to participate in these offerings compared to non-disabled individuals.

52. Additionally, 42 U.S.C. § 12182(b)(2)(A)(ii) requires businesses to make reasonable modifications to their policies, practices, or procedures when such modifications are necessary to provide equal access to goods and services, unless the modifications would fundamentally alter the nature of the offerings. Under § 12182(b)(2)(A)(iii), it is also unlawful discrimination to fail to provide auxiliary aids and services necessary to ensure individuals with disabilities are not excluded or treated differently because of the absence of such aids, unless doing so would fundamentally alter the goods or services or result in undue burden.

53. Well-established guidelines, including WCAG 2.2, exist for making websites accessible to blind users. These guidelines have been adopted by numerous businesses to ensure equal online access and include basic components such as adding alternative text to images, structuring content for keyboard navigation, and labeling interactive elements. Implementing these features on the Website would not fundamentally alter Defendant's business or impose an undue burden.

54. Defendant's failure to incorporate these readily available accessibility components violates Title III of the ADA. As a result, blind individuals like Plaintiff have been denied full and equal access to Defendant's Website, deprived of the ability to research and purchase camera drones independently, and forced to rely on others for assistance, if they could complete a purchase at all.

55. Defendant has not taken prompt or effective steps to correct these violations, and its discriminatory conduct is ongoing. Unless enjoined by this Court, Defendant will continue to discriminate against Plaintiff and class members by maintaining a Website that is inaccessible to blind users.

56. Plaintiff is entitled to injunctive relief compelling Defendant to make its Website accessible in compliance with the ADA. Plaintiff is also entitled to reasonable attorneys' fees and costs under 42 U.S.C. § 12205. Pursuant to 42 U.S.C. § 12188, Plaintiff seeks judgment granting the relief requested in the prayer for relief.

### SECOND CAUSE OF ACTION

*(Violation of New York State Human Rights Law, N.Y. Exec. Law
Article 15 (Executive Law § 292 et seq.))*

57. Plaintiff, on behalf of himself and the class, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

58. Under N.Y. Exec. Law § 296(2)(a), it is an unlawful discriminatory practice for any owner, lessee, proprietor, manager, superintendent, agent, or employee of a place of public accommodation to directly or indirectly deny any person, because of disability, the accommodations, advantages, facilities, or privileges of that place.

59. Defendant's Website, which allows consumers to research and purchase camera drones and related products, qualifies as a sales establishment and public accommodation under N.Y. Exec. Law § 292(9). Defendant, as owner and operator of the Website, is subject to the requirements of the New York State Human Rights Law.

60. Defendant's failure to remove barriers that prevent blind individuals from accessing the Website constitutes an unlawful discriminatory practice under N.Y. Exec. Law § 296(2)(a). These barriers have effectively denied blind patrons, including Plaintiff, full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public.

61. Specifically, the Human Rights Law defines unlawful discrimination to include refusing to make reasonable modifications necessary to provide individuals with disabilities access to facilities, privileges, or advantages, unless such modifications would fundamentally alter the nature of those offerings. Additionally, it prohibits failing to take necessary steps to ensure that individuals with disabilities are not excluded because of the absence of auxiliary aids and services, unless doing so would fundamentally alter the offering or result in an undue burden. See N.Y. Exec. Law § 296(2)(c)(ii).

62. Defendant's ongoing operation of a website riddled with accessibility barriers—including unlabeled images, poor heading structures, inaccessible shopping carts, and other obstacles—has caused blind customers like Plaintiff to be denied equal access to Defendant's goods and services.

63. Defendant's actions constitute intentional discrimination. Defendant knew of the discrimination caused by the inaccessible Website and failed to take reasonable corrective steps, even as harm to blind customers continued. These violations are ongoing.

64. As a result, Defendant discriminates and will continue to discriminate against Plaintiff and class members by denying them the full and equal enjoyment of the Website's goods, services, and privileges. Unless enjoined by this Court, Defendant's unlawful conduct will persist.

65. Plaintiff is entitled to injunctive relief, compensatory damages, civil penalties, and reasonable attorneys' fees and costs under N.Y. Exec. Law § 297 and related provisions. Plaintiff seeks judgment granting the relief requested in the prayer for relief.

## **THIRD CAUSE OF ACTION**

*(Violation of New York State Civil Rights Law,*
*NY CLS Civ R, Article 4 (CLS Civ R § 40 et seq.))*

78. Plaintiff, on behalf of himself and the class, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

79. Plaintiff has served notice on the New York Attorney General as required by N.Y. Civ. Rights Law § 41.

80. Under N.Y. Civ. Rights Law § 40, all persons in New York are entitled to the full and equal accommodations, advantages, facilities, and privileges of places of public accommodation. Owners, managers, or employees of such places may not directly or indirectly refuse or deny these accommodations to any person based on disability.

81. N.Y. Civ. Rights Law § 40-c(2) further provides that no person, because of disability, shall be subjected to discrimination or harassment in the exercise of their civil rights by any other person, corporation, or institution.

82. Defendant's Website is a sales establishment and public accommodation under N.Y. Civ. Rights Law § 40-c(2). Defendant, as owner and operator of the Website, is bound by these provisions.

83. By operating a Website with substantial accessibility barriers—including missing or misleading alternative text on product images, improperly labeled links, inaccessible forms, and poorly structured headings—Defendant has denied blind individuals like Plaintiff full and equal access to the goods and services offered, including researching and purchasing camera drones.

84. These accessibility barriers exclude blind customers from independently using the Website, forcing them to rely on sighted assistance or forgo purchases altogether.

85. Under N.Y. Civ. Rights Law §§ 40-d and 41, corporations that violate these protections are liable for penalties of not less than one hundred dollars nor more than five hundred dollars per offense, recoverable by the person aggrieved in any court of competent jurisdiction.

86. Defendant's failure to take prompt and equitable steps to correct these barriers constitutes ongoing violations of the Civil Rights Law. Unless enjoined by this Court, Defendant's conduct will continue to harm Plaintiff and other blind consumers.

87. Plaintiff is entitled to injunctive relief, compensatory damages, statutory penalties for each instance of discrimination, and reasonable attorneys' fees and costs. Plaintiff seeks judgment granting the relief requested in the prayer for relief.

## FOURTH CAUSE OF ACTION

*(Violation of New York City Human Rights Law,
N.Y.C. Administrative Code § 8-102, et seq.)*

88. Plaintiff, on behalf of himself and the class, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

89. N.Y.C. Administrative Code § 8-107(4)(a) makes it an unlawful discriminatory practice for any owner, lessee, proprietor, manager, agent, or employee of a place or provider of public accommodation to refuse, withhold from, or deny any person, because of disability, the accommodations, advantages, facilities, or privileges of that place.

90. Defendant's Website, as a retail site selling camera drones and photography equipment, is a sales establishment and public accommodation under N.Y.C. Administrative Code § 8-102(9). Defendant, as owner and operator of the Website, is subject to the New York City Human Rights Law.

91. By maintaining an inaccessible Website, Defendant has denied Plaintiff and other blind individuals full and equal enjoyment of the Website's goods, services, and privileges. The inaccessible features include unlabeled or misleading images, poorly organized page headings that prevent effective navigation with screen-reading software, and inaccessible shopping cart and checkout functions.

92. Under N.Y.C. Administrative Code § 8-107(15)(a), businesses must provide reasonable accommodations to ensure individuals with disabilities can access their goods and services. Defendant's failure to make the Website accessible violates this requirement, as the Website's barriers effectively exclude blind users from independently shopping for camera drones.

93. Defendant's conduct constitutes intentional discrimination, as it has knowingly constructed, maintained, and continued to operate a Website that excludes blind consumers. Despite the availability of straightforward and well-established accessibility guidelines, Defendant has failed to act to correct the Website's barriers.

94. Unless enjoined by this Court, Defendant's discriminatory practices will continue, causing ongoing harm to Plaintiff and class members. Plaintiff is entitled to injunctive relief, compensatory damages, civil penalties, and reasonable attorneys' fees and costs under N.Y.C. Administrative Code §§ 8-120(8) and 8-126(a). Plaintiff seeks judgment granting the relief requested in the prayer for relief.

## **FIFTH CAUSE OF ACTION**

*(Declaratory Relief)*

95. Plaintiff, on behalf of himself and the class, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

96. An actual controversy exists between Plaintiff and Defendant because Plaintiff contends, and believes Defendant denies, that the Website contains accessibility barriers that deny blind customers full and equal access to the goods, services, and facilities offered through the Website. Plaintiff asserts that these barriers violate Title III of the ADA, 42 U.S.C. §§ 12182 et seq., the New York State Human Rights Law, and the New York City Human Rights Law, all of which prohibit discrimination against blind individuals in places of public accommodation.

97. A judicial declaration is necessary and appropriate so that both parties understand their rights and obligations regarding Defendant's duty to operate the Website in a manner compliant with federal, state, and city disability access laws.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully demands judgment in favor of Plaintiff and the class and against the Defendants as follows:

a) A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y. Exec. Law § 296, et seq., and N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b) A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its website, Website, into full compliance with the requirements set

forth in the ADA, and its implementing regulations, so that Website is readily accessible to and usable by blind individuals;

c) A declaration that Defendant owns, maintains and/or operates its website, Website, in a manner which discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y. Exec. Law § 296, et seq., and N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d) An order certifying this case as a class action under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and his attorneys as Class Counsel;

e) An order directing Defendants to continually update and maintain its website to ensure that it remains fully accessible to and usable by the visually-impaired;

f) Compensatory damages in an amount to be determined by proof, including all applicable statutory damages and fines, to Plaintiff and the proposed class for violations of their civil rights under New York State Human Rights Law and City Law;

g) Plaintiff's reasonable attorneys' fees, expenses, and costs of suit as provided by state and federal law;

h) For pre- and post-judgment interest to the extent permitted by law; and

i) For such other and further relief which this court deems just and proper.

Dated: Manhasset, NY

June 30, 2025

        GABRIEL A. LEVY, P.C.
        *Attorney for Plaintiff*

        **/s/ *Gabriel A. Levy, Esq.***

        By: GABRIEL A. LEVY, ESQ (5488655)
           1129 Northern Blvd, Suite 404
           Manhasset, NY 11030
           Tel: +1 347-941-4715
           Email: Glevy@glpcfirm.com